

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00717-CV

In the Interest of **J.B.M.**, L.P.B., B.C.B., G.L.B. II, and G.G.B., Children

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-01298
Honorable Dick Alcala, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed: March 13, 2019

AFFIRMED

This is an appeal from a judgment terminating Mother's parental rights to four of her children, L.P.B., B.C.B., G.L.B. II, and G.G.B ("the children").[1] Mother challenges the sufficiency of the evidence to support the trial court's findings that statutory grounds for termination existed and that termination was in the children's best interest. We affirm the trial court's judgment.[2]

### BACKGROUND

On June 15, 2016, the Texas Department of Protective and Family Services filed an original petition to terminate Mother's parental rights. In a supporting affidavit, a Department caseworker

---

[1]To protect the identity of the minor children in an appeal from a judgment terminating parental rights, we refer to the children's mother as "Mother" and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

[2]The trial court's judgment also terminated the parental rights of L.P.B., B.C.B., G.L.B. II, and G.G.B.'s father, but he did not appeal.

stated the Department had received several referrals for neglectful supervision of the children, who at the time were ages seven, six, four, and one. The caseworker's affidavit further stated that the Department had received a referral regarding a domestic violence incident involving the firing of a gun. The trial court signed an emergency order removing the children from Mother's home. At a subsequent hearing, the Department was named the children's temporary managing conservator and the children were placed in foster care. The Department prepared a service plan for Mother, which was made an order of the court on August 15, 2016.

More than a year later, on November 13, 2017, the trial court signed an order authorizing the monitored return of the children to Mother. The children were returned to Mother's care for a brief period. However, in February 2018, the children were again removed from Mother's care, and the case was set for trial on the Department's termination pleadings.

The trial court held a bench trial on August 21 and September 17, 2018. Mother appeared at the trial with counsel. On September 17, 2018, the trial court signed a judgment terminating Mother's parental rights. In the termination judgment, the trial court found that termination of the parent-child relationship between Mother and the children was in the children's best interest, and that Mother had (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the children's physical or emotional well-being pursuant to Texas Family Code section 161.001(b)(1)(D); (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being pursuant to Texas Family Code section 161.001(b)(1)(E); and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for

Mother to obtain the return of the children pursuant to Texas Family Code section 161.001(b)(1)(O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O). Mother appealed.[3]

## ANALYSIS

On appeal, Mother contends the evidence is legally and factually insufficient to support the trial court's findings of statutory grounds for termination and its finding that termination is in the children's best interest.

### Standard of Review

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove, by clear and convincing evidence, at least one of the statutory grounds in Texas Family Code section 161.001(b)(1) and that termination is in the children's best interest. *See* TEX. FAM. CODE ANN. §§ 161.001(b), 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Here, the trial court found, by clear and convincing evidence, three distinct statutory grounds to terminate Mother's parental rights. The trial court also found, by clear and convincing evidence, that termination of Mother's parental rights was in the children's best interest.

When reviewing the sufficiency of the evidence, we apply the well-established standards of review for legal and factual sufficiency. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### Statutory Ground for Termination—Section 161.001(b)(1)(E)

We begin our analysis by addressing the sufficiency of the evidence to support the trial court's finding that Mother engaged in conduct or knowingly placed the children with persons who

---

[3]Another child, J.B.M., was included in this case, but Mother's parental rights were not terminated as to J.B.M. J.B.M.'s father was appointed the child's permanent managing conservator and Mother was appointed possessory conservator. On appeal, Mother does not challenge the trial court's orders concerning J.B.M.

engaged in conduct that endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE § 161.001(b)(1)(E). Under section 161.001(b)(1)(E), endangering conduct "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Endangering conduct is conduct that exposes the children to loss or injury or jeopardizes their emotional or physical well-being. *In re R.S.–T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (citing *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The evidence must show the endangerment was the direct result of the parent's conduct, including her actions, omissions, or failures to act. *Id.* at 110. Endangerment occurs when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards. *Id*. Domestic violence and a propensity for violence may be considered evidence of endangerment, even if the endangering acts did not occur in the children's presence, were not directed at the children, or did not cause actual injury to the children. *Id*.; *In re D.J.C.*, No. 04–16–00564–CV, 2016 WL 7379248, at *6 (Tex. App.—San Antonio Dec. 21, 2016, no pet.) (mem. op.).

Here, multiple witnesses testified at trial, including two Department caseworkers, two therapists, and a CASA volunteer. The testimony of these witnesses demonstrated that Mother engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being.

The caseworkers testified that the Department filed this case after receiving several referrals for neglectful supervision and a referral for domestic violence. The domestic violence referral involved an incident that occurred in Mother's home. Although married, Mother and the children's father were living apart. The children's father dropped the children off at Mother's home

and learned that Mother's boyfriend, Ed,[4] was in the home. The children's father fired a gun from outside the home. Fortunately, no one was injured, but the children were frightened by the incident. The police were called to the scene to investigate. After the incident, a caseworker took Mother and the children to a battered women's shelter; however, Mother and the children left the shelter the next day before the incident was fully investigated.

The Department subsequently learned about other domestic violence incidents perpetrated by the children's father and by Mother's boyfriend, Ed. The children told a therapist their parents would fight and their father would push Mother against the wall. The children also told a caseworker and a therapist that Ed was physically violent with Mother, pushing, choking, and hitting her. The children were particularly frightened by the choking incidents. The children reported that Ed was verbally abusive with Mother. The children said they were afraid of Ed. On one occasion, Mother admitted to a caseworker that Ed was physically violent with her. Thereafter, Mother denied that Ed was physically violent with her.

Based on this information, the caseworkers believed it was important for Mother to become aware of domestic violence and to learn how to keep the children and herself safe. Therefore, Mother's service plan included domestic violence awareness classes, individual therapy, and parenting classes.

After Mother completed domestic violence awareness classes and other services, the Department obtained the trial court's approval for the monitored return of the children to Mother. The children's therapist believed the children had been traumatized by their previous experiences in Mother's home. The therapist tried to prepare the children to return to Mother's care. As part of this preparation, Mother was invited to participate in some of the children's therapy sessions. The

---

[4]We use an alias to refer to Mother's boyfriend.

therapist felt the children would benefit from Mother acknowledging the children's trauma and fear. Most of these joint sessions did not go well. Mother was defensive and she placed blame on others. However, in one session, Mother did acknowledge that she had made some bad choices and that she needed to put her relationships with her children before her relationships with men.

The children were transitioned back into Mother's home. Mother was told that she could not allow people who had a criminal background or a CPS history to be around the children. Additionally, Mother was told that she could not allow her boyfriend, Ed, to be around the children. Less than a month after all of the children were returned to Mother's care, a Department caseworker made an unannounced visit to Mother's home and discovered that Ed was living there. The Department caseworker also noticed that Mother had bruises on her face and neck. To explain the bruises, Mother said she and Ed had argued and she had fallen down the stairs. However, according to the caseworker, the bruising on Mother's neck was extensive and it appeared to be from choking. Although Mother admitted that she had allowed Ed to be around the children, she denied that he was living in her home. Nevertheless, the children reported that Ed had been living with them during the monitored return and they had seen him hit Mother.

Once again, the children were removed from Mother's home. After the second removal, Mother re-enrolled in domestic violence classes, but she was discharged after she stopped attending classes. One of the caseworkers testified that Mother had failed to demonstrate that she could keep her home safe for her children and for herself. Additionally, a caseworker and the children's therapist testified that they believed the children's brief return to Mother's care had caused the children to regress. The oldest child had pre-existing behavioral problems which increased when she was returned to Mother's care. The two youngest children started to have behavioral problems, including "acting out" sexually and exhibiting anger and aggression.

According to this caseworker, it took about two months of therapy to get the children "back on track."

A CASA volunteer familiar with the case echoed these concerns. When the children were returned to Mother's care, they exhibited behavioral problems at school and their grades dropped. The CASA volunteer visited the children in Mother's home and they were very quiet around Mother. When the children were removed from Mother's home and returned to foster care, they went through an adjustment period. However, after a couple of months, the children's behavior at school was better and their grades improved. The children seemed happy.

Mother argues the evidence failed to establish that she was aware that the children's father or her boyfriend had a propensity for violence. To support this argument, Mother points to her testimony that the domestic violence incidents in this case were isolated events and that she was no longer in a relationship with either the children's father or her boyfriend. We are not persuaded by these arguments. Ample evidence was presented that Mother was aware of the danger created by her relationship with Ed and that she disregarded this danger. Based on the testimony of the caseworkers, the therapist, and the CASA volunteer, the trial court could have found that the domestic violence incidents were not isolated events and that Mother was aware of Ed's propensity for violence. As the factfinder, the trial court was free to disbelieve Mother's testimony and to believe the other witnesses' testimony. *See In re H.R.M.*, 209 S.W.3d at 109 (recognizing that the factfinder is the sole arbiter of the credibility of witnesses and the appellate court must give due deference to the factfinder).

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude a reasonable trier of fact could have formed a firm belief or conviction that Mother engaged in a course of conduct that had the effect of endangering the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E);

*In re R.S.–T.*, 522 S.W.3d at 110. Therefore, the evidence is legally and factually sufficient to support the trial court's finding under section 161.001(b)(1)(E) of the Texas Family Code.

Having determined the evidence is legally and factually sufficient to support the trial court's finding on one statutory ground, we need not consider whether the evidence would support the trial court's findings under section 161.001(b)(1)(D) or (O). *See In re A.V.*, 113 S.W.3d at 362 ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.").

### *Children's Best Interest*

In determining whether a parent is willing and able to provide her children with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[5] *See* TEX. FAM. CODE ANN. § 263.307(b). We also consider the non-exhaustive *Holley* factors.[6] *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013); *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Evidence that proves one or more statutory ground for termination may also constitute

---

[5]These factors are: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b).

[6]These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

evidence illustrating that termination is in the children's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best interest analysis may consider direct and circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by [her] past conduct and determine whether termination of parental rights is in the child's best interest." *Id*.

Here, a caseworker testified that she believed that termination of Mother's parental rights was in the children's best interest because Mother's actions proved that she did not learn from the domestic violence classes she attended. After the children were returned to her, Mother put them in danger again by allowing Ed to be with her and her children. The caseworker expressed concern that this pattern would continue. Furthermore, the caseworker was confident that the Department would find permanent homes for the children. At the time of trial, the children were not all living together. They had been placed in three separate foster homes. Some of the current foster parents had expressed an interest in adoption. Additionally, at the beginning of the case, all four children had lived together in a foster home and these foster parents wanted to adopt all four children. One of the therapists testified that Mother had not taken responsibility for the children's trauma or acknowledged their difficulties. She further noted that the children had talked about life in their parents' home. The children said the home was full of roaches and they were fed two meals or less each day. The children compared this to their foster parents who fed them three meals a day, took care of them, and kept them safe. The therapist also testified that one of the children, the second youngest, said he did not want to return to Mother's home and he wanted to stay in his foster home. Finally, the CASA volunteer testified that the children were now in stable, safe environments.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re H.R.M.*, 209 S.W.3d at 108; *In re J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing an appellate court need not detail the evidence if affirming a termination judgment). Therefore, the evidence is legally and factually sufficient to support the trial court's best interest finding.

## CONCLUSION

We affirm the trial court's judgment.

Irene Rios, Justice